Argued and submitted March 5, the decision of the Court of Appeals and the
judgment of the circuit court are affirmed August 27, 1992

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# DARIN DALE PLOWMAN,
*Petitioner on Review.*

## (CC C89-12-36912; CA A65145; SC S38328)
838 P2d 558

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender, Salem.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the reponse to the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Rex Armstrong, of Bogle & Gates, Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

GRABER, J.

## GRABER, J.

## INTRODUCTION

The issue in this case is the constitutional validity of ORS 166.165(1)(a)(A), the statute that creates and defines the crime of intimidation in the first degree.[1] Defendant and three codefendants were charged with violating ORS 166.165(1)(a)(A), which makes it a crime for two or more persons, acting together, to "[i]ntentionally, knowingly, or recklessly cause physical injury to another because of their perception of that person's race, color, religion, national origin or sexual orientation." Defendant demurred on the grounds that the statute is vague and that it burdens his rights to speak and to express his opinions freely.

The trial court overruled the demurrer. Defendant pleaded not guilty. A jury convicted him.[2] Defendant appealed his conviction for intimidation, contending that the trial court erred in overruling his demurrer. The Court of Appeals affirmed. *State v. Plowman*, 107 Or App 782, 813 P2d 1114 (1991). We allowed review to address the important constitutional questions involved and now affirm.

The Court of Appeals stated the facts in *State v. Hendrix*, 107 Or App 734, 737-38, 813 P2d 1115 (1990), which involved one of defendant's codefendants:

"The evidence showed that [Hendrix] and his three cohorts, [defendant], Neill and Schindler, drove to a Portland store at Southeast 136th and Powell Boulevard to buy beer. * * * [Defendant] and Neill went inside the store. [Hendrix] and Schindler walked behind the store to urinate.

"Serafin and Slumano, the victims, arrived at the store in Slumano's vehicle. Serafin wanted to make a telephone call.

---

[1] Defendant's challenge is only to the statutory paragraph under which he was charged: ORS 166.165(1)(a)(A). Nothing in this opinion is meant to express any view as to the constitutionality of any other portion of that statute.

[2] Defendant was also charged with, and convicted of, fourth degree assault, ORS 163.160. That statute provides in part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another[.]"

Defendant does not dispute the validity of that conviction.

Schindler returned to the front of the store, approached Serafin and asked him if he had any cocaine. Serafin, who speaks only a little English, said he did not have anything and started to walk away. Schindler attacked him, beating him on the head and kicking him. Neill joined Schindler in the attack. [Defendant] and [Hendrix] began beating Slumano, who was sitting in his car. [Defendant] punched Serafin; Schindler kicked him. Serafin fell to the pavement. [Hendrix] pinned Serafin's back to the pavement and repeatedly slammed the store's metal-framed glass entry door against his head. [Hendrix] and his three associates took turns beating Serafin and Slumano, sometimes ganging up three against one. Serafin and Slumano were unarmed and did not fight back. * * *

"During the attack, which lasted about two minutes, eyewitnesses heard Neill shout at Serafin, 'Talk in English, motherfucker.' [Defendant] and Schindler screamed 'white power' or 'white pride' loud enough to be heard 50 feet away. [Defendant] yelled, 'Knock it off with us white boys.' When the store clerk told the assailants that she had called the police, [defendant] became even more agitated and screamed, 'They're just Mexicans' and 'They're just fucking wetbacks.' As [Hendrix] and the three cohorts sped away in their car, someone inside the car shouted 'white power.' "

## CONSTITUTIONAL ISSUES

### A. *Vagueness Challenge under the Oregon Constitution*

Defendant contends that ORS 166.165(1)(a)(A) violates Article I, sections 20 and 21, of the Oregon Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because its terms are vague. We analyze his contention under the Oregon Constitution first. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (courts should decide questions of state law before reaching federal constitutional issues).

■ "The terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties." *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985). A "reasonable degree of certainty" about what conduct falls within the statute's prohibition is required; absolute certainty is not. *State v. Cornell/Pinnell*, 304 Or 27, 29-30, 741 P2d 501

(1987). In addition to giving fair notice of prohibited conduct, a criminal statute must not be so vague as to allow a judge or jury unbridled discretion to decide what conduct to punish. *Id.* at 29. A law that gives such unbridled discretion to judges and juries offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution,[3] and the principle against standardless and unequal application of criminal laws embodied in Article I, section 20, of the Oregon Constitution.[4] *State v. Graves, supra,* 299 Or at 195.

■      Defendant's challenge is directed to the phrase "because of their perception of [the victims'] race, color, religion, national origin or sexual orientation." ORS 166.165(1)(a)(A). He argues that that phrase is "inherently nebulous and imprecise." Consequently, he asserts, it invites standardless prosecution. He claims that prosecutors will be able to charge, and juries will be able to convict, under the statute whenever the race, color, religion, national origin, or sexual orientation of the assailants differs from that of the victim. We disagree.

The crime is defined in sufficiently clear and explicit terms to apprise defendants and others of what conduct is prohibited. ORS 166.165(1)(a)(A) prohibits two or more assailants, acting together, from causing physical injury to another because the assailants perceive the victim to belong to one of the specified groups. The challenged phrase means simply that the assailants' perception need not be accurate for them to have committed the crime of intimidation in the first degree. For example, if the assailants, acting together, intentionally cause physical injury to a victim because they perceive the victim to be Catholic, the assailants have committed the crime of intimidation in the first degree even if the victim is not in fact Catholic, but is instead Episcopalian.

---

[3] Article I, section 21, of the Oregon Constitution provides in part:

"No *ex-post facto* law, or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution * * *."

[4] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

■ Defendant's assertion that the statute invites prosecution whenever the race of the assailants and the victim happen to differ misses the point in at least two respects. First, even where race is the alleged motivating factor, the perpetrators and the victim do not have to be of different races. Second, the statute requires that the assailants inflict the physical injury "because of" their perception that the victim belonged to a specified group. The statute expressly and unambiguously requires the state to prove a *causal connection* between the infliction of injury and the assailants' perception of the group to which the victim belongs. *See State v. Brown*, 310 Or 347, 353-54, 800 P2d 259 (1990) (under ORS 163.095(2)(a), defining a form of aggravated murder, the state must prove a *causal connection* between the murder and the victim's status as a witness, juror, police officer, or other person with duties to the criminal justice system); *State v. Maney*, 297 Or 620, 626, 688 P2d 63 (1984) (same). The trier of fact must find all the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 313 Or 19, 24, 828 P2d 1006 (1992).

ORS 166.165(1)(a)(A) is not unconstitutionally vague under Article I, sections 20 and 21, of the Oregon Constitution.

B. *Vagueness Under the United States Constitution*

Defendant argues that the statute is vague under the Constitution of the United States for the same reasons that he advances under the Oregon Constitution. The Supreme Court of the United States has interpreted the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States to prohibit the states from enforcing vague criminal laws. *Lanzetta v. New Jersey*, 306 US 451, 59 S Ct 618, 83 L Ed 888 (1939).

A "void for vagueness" analysis under the federal constitution is much like the Oregon analysis. *State v. Robertson*, 293 Or 402, 409, 649 P2d 569 (1982). In order to withstand a vagueness challenge, a statute that defines a criminal offense must give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *United States v. Murphy*, 809 F2d 1427, 1431 (9th Cir 1987)

(citing *Kolender v. Lawson*, 461 US 352, 357, 103 S Ct 1855, 75 L Ed 2d 903 (1983)). Moreover, the law must provide explicit standards so that those who enforce and apply the law do not do so in an arbitrary or discriminatory fashion. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 US 489, 503, 102 S Ct 1186, 71 L Ed 2d 362 (1982). As our discussion under the Oregon Constitution reveals, ORS 166.165 (1)(a)(A) does both and, accordingly, does not offend the Due Process Clause.

ORS 166.165(1)(a)(A) is not unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

C. *Article I, Section 8, of the Oregon Constitution*

Defendant next argues that ORS 166.165(1)(a)(A), on its face, violates Article I, section 8, of the Oregon Constitution. Article I, section 8 provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Defendant contends that ORS 166.165(1)(a)(A) both restrains the free expression of his opinion and also restricts his right to speak.

Defendant asserts that the intimidation law punishes the free expression of opinion, because it enhances the punishment that he otherwise would receive for an assault *solely* on the basis of his expression of his beliefs. Assault in the fourth degree, the other crime of which defendant was convicted, is a Class A misdemeanor, ORS 163.160(2), but intimidation in the first degree is a Class C felony, ORS 166.165(2). Defendant contends that the act in both crimes is the same — assault — and that the legislature has singled out for enhanced penalty those persons who hold particular beliefs when they commit the assault. He also argues that the statute thus restricts speech, because a violation of it "must necessarily be proved by the content of his speech or associations."

In *State v. Robertson, supra*, this court established a framework for evaluating whether a law violates Article I,

section 8. First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on proscribing the pursuit or accomplishment of *forbidden results*. 293 Or at 416-17. The court reasoned that a law of the former type, a law "written in terms directed to the substance of any 'opinion' or any 'subject' of communication," violates Article I, section 8,

"unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *Id.* at 412.

Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. The coercion law at issue in *Robertson* was of that category. *Id.* at 417-18.[5] Such laws are analyzed for overbreadth:

"When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.' " *Ibid.*

The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:

"If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8." *Id.* at 417.

Defendant characterizes ORS 166.165(1)(a)(A) as a law that expressly proscribes opinion or speech. He argues

---

[5] The laws upheld in *State v. Moyle*, 299 Or 691, 705 P2d 740 (1985) (harassment, formerly ORS 166.065(1)(d), now ORS 166.065(1)(c)), and *State v. Garcias*, 296 Or 688, 679 P2d 1354 (1984) (menacing, ORS 163.190(1)), and the laws struck down in *State v. Spencer*, 289 Or 225, 661 P2d 1147 (1980) (disorderly conduct, *former* ORS 166.025(1)(c), *repealed by* Or Laws 1983, ch 546, § 5), and *State v. Blair*, 287 Or 519, 601 P2d 766 (1979) (harassment, ORS 166.065(1)(c), *amended by* Or Laws 1981, ch 468, § 1), also were of that category.

that the law might be constitutional if it proscribed a forbidden effect, but that it does not do so.

■    Our first task, then, is to determine whether the law is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *State v. Robertson, supra*, 293 Or at 412. We conclude that it is not. ORS 166.165(1)(a)(A) contains four elements: (1) Two or more persons must act together; (2) they must act because of their perception of the victim's race, color, religion, national origin, or sexual orientation; (3) they must cause physical injury to the victim; and (4) they must cause the physical injury intentionally, knowingly, or recklessly. Persons can commit that crime without speaking a word, and holding no opinion other than their perception of the victim's characteristics.

■    Defendant's primary argument is that the second element proscribes opinion, because it enhances the penalty for assault based entirely on the assailants' beliefs. First, we disagree with defendant that the crime defined by ORS 166.165(1)(a)(A) differs from assault *solely* because the attack was precipitated by the assailants' perception that the victim belonged to a specified group. Another element of the crime differentiates intimidation in the first degree from fourth degree assault. The first element of intimidation in the first degree is that two or more persons act together. There is no similar requirement in fourth degree assault. *See* ORS 163.160(1)(a) (quoted in note 2, *supra*).

We also reject the broader argument that ORS 166.165(1)(a)(A) proscribes opinion. Rather than proscribing opinion, that law proscribes a forbidden effect: the effect of acting together to cause physical injury to a victim whom the assailants have targeted because of their perception that that victim belongs to a particular group. The assailants' opinions, if any, are not punishable as such. ORS 166.165(1)(a)(A) proscribes and punishes committing an act, not holding a belief. Put differently: One may hate members of a specified group all one wishes, but still be punished constitutionally if one acts together with another to cause physical injury to a person because of that person's perceived membership in the hated group. (Indeed, one need not hate at all to commit this crime; one need only meet the four elements stated above.)

In enacting the intimidation statute, the legislature determined that the potential for harm is greater when two or more assailants act together than when an assailant acts alone and that causing physical injury to a victim because of the perception that the victim belongs to one of the specified groups creates a harm to society distinct from and greater than the harm caused by the assault alone. Such crimes — because they are directed not only toward the victim but, in essence, toward an entire group of which the victim is perceived to be a member — invite imitation, retaliation, and insecurity on the part of persons in the group to which the victim was perceived by the assailants to belong. Such crimes are particularly harmful, because the victim is attacked on the basis of characteristics, perceived to be possessed by the victim, that have historically been targeted for wrongs.[6] Those are harms that the legislature is entitled to proscribe and penalize by criminal laws.

We next address defendant's contention that ORS 166.165(1)(a)(A), in effect, proscribes communication, because "it must necessarily be proved by the content of his speech or associations." As we have noted, it is not an element of the crime that communication occur; defendant appears to concede that the crime does not *expressly* proscribe communication. The answer to defendant's argument that ORS 166.165(1)(a)(A), *in effect*, proscribes communication is twofold.

First, ORS 166.165(1)(a)(A) need not be proved by speech or associations. For example, if the state showed that every Saturday night for two months the defendants traveled to an area with a large Hispanic population and assaulted a Hispanic person, the trier of fact could infer that the defendants intended to cause physical injury to the present victim because he is perceived to be Hispanic.

---

[6] The statute was first enacted in 1981 at the request of then-Governor Vic Atiyeh. Minutes, House Judiciary Committee, Subcommittee 1, April 14, 1981, Exhibit A, Testimony of Bob Oliver, Legal Counsel to the Governor. Governor Atiyeh sponsored the measure out of concern that assault coupled with the requisite intent is more likely than other assault to result in retaliatory violence and to threaten social order. House Committee on Judiciary, Subcommittee 1, March 9, 1983, HB 2803, Exhibit C, p 2. *See also* House of Representatives, Judiciary Committee, Staff Measure Analysis, prepared by the Committee's Legal Counsel (discussing purpose of bill).

Second, there is a distinction between making speech the crime itself, or an element of the crime, and using speech to prove the crime. As discussed earlier in this opinion, a defendant who makes a facial challenge to a statute under Article I, section 8, must demonstrate the former — that the legislature intended to punish the speech itself. *State v. Robertson, supra.*

Speech is often used to prove crimes that do not proscribe speech, particularly the intent element of those crimes. For example, if an assailant grabs a woman's arm and strikes her, stating "I am going to kill you," the state can use the assailant's words to prove the crime of attempted murder, because the words reveal the necessary intent. *See* ORS 163.115 (defining murder); ORS 161.405 (a person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime). But the words themselves are not an element of the crime of attempted murder; they simply make the required intent manifest. When the assailant has committed the act with the necessary intent, the assailant has committed the crime, whether or not the assailant spoke. Similarly, if assailants yell racial epithets while acting together to cause physical injury to a victim whom they perceive to be a member of the race at which the epithets are aimed, their words can be used to prove their perception of the victim's race and their intention to cause physical injury to the victim because of that perception, but the words themselves are not an element of the crime.

Defendant's argument that ORS 166.165(1)(a)(A) is facially invalid under Article I, section 8, of the Oregon Constitution fails.

D. *First Amendment*

Defendant contends that ORS 166.165(1)(a)(A) "punishes speech" and, therefore, offends the First Amendment to the Constitution of the United States. He offers no independent analysis under the First Amendment, but relies on the arguments that he articulated in his challenge under Article I, section 8, of the Oregon Constitution.

The First Amendment provides in part:

"Congress shall make no law * * * abridging the freedom of speech * * *."[7]

The First Amendment generally prevents government from proscribing speech or expressive conduct because of disapproval of the ideas expressed. *R.A.V. v. City of St. Paul*, ___ US ___, 112 S Ct 2538, 120 L Ed 2d 305 (1992). The defendant in that case had been charged with violating a St. Paul, Minnesota, ordinance prohibiting the placement on public or private property of a symbol that one knows or should know arouses anger, alarm, or resentment in others on the basis of race, color, creed, religion, or sex. The Supreme Court of the United States held that "the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses." 112 S Ct at 2542.

The Court distinguished laws, such as the St. Paul ordinance, that are directed against the substance of speech from laws that are directed against conduct. With respect to the latter, the Court wrote:

"Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy." 112 S Ct at 2546-47.

As discussed in Part II C, *ante*, ORS 166.165(1)(a)(A) is a law directed against conduct, not a law directed against the substance of speech. In *R.A.V.*, the Court expressly did not rule on the constitutionality under the First Amendment of a statute like the one that we consider here. The defendant in *R.A.V.* also had been charged with violating a Minnesota statute that punishes racially motivated assaults, but he did not challenge that statute. 112 S Ct at 2542 n 2.

The Wisconsin Supreme Court has ruled on the constitutionality of a law punishing racially motivated assaults. That court recently held that Wisconsin's intimidation statute is unconstitutional under the First Amendment. *State v. Mitchell*, 169 Wis 2d 153, 485 NW2d 807 (1992). That statute increases the penalties for certain underlying crimes

---

[7] The First Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 US 652, 45 S Ct 625, 69 L Ed 1138 (1925).

if the actor "[i]ntentionally selects the person against whom the crime * * * is committed * * * because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person." *Id.* at 157 n 1. The majority of that court reasoned that the Wisconsin statute punishes the defendant's biased thought. The majority further reasoned that the statute punishes speech, because the element of discriminatory selection of the victim is generally proved by evidence of the defendant's speech. Because of our analysis of the way in which ORS 166.165(2)(a)(A) functions, see Part II C, *ante*, we disagree with that reasoning.

We also note a distinction between the statute at issue in this case and the statute considered in *State v. Mitchell, supra.* As discussed above, ORS 166.165(1)(a)(A) contains the requirement that two or more people act together. The statute in question in *Mitchell* did not contain that requirement. *Id.* at 157 n 1.

To summarize, in our analysis under the Oregon Constitution, we concluded that ORS 166.165(1)(a)(A) does not proscribe speech or target conduct on the basis of its expressive content. Accordingly, we conclude that ORS 166.165(1)(a)(A) does not violate the First Amendment to the Constitution of the United States.

## CONCLUSION

ORS 166.165(1)(a)(A) is not void for vagueness under either Article I, sections 20 or 21, of the Oregon Constitution, or the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. Neither does ORS 166.165(1)(a)(A) on its face offend Article I, section 8, of the Oregon Constitution, or the First Amendment to the Constitution of the United States.

The decision the Court of Appeals and the judgment of the circuit court are affirmed.