Argued and submitted March 5, the decision of the Court of Appeals and the judgment of the circuit court are affirmed August 27, 1992

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## SHAWN WAYNE HENDRIX,
*Petitioner on Review.*

(CC C89-12-36913; CA A65065; SC S38384)

838 P2d 566

Laura Graser, Portland, argued the cause and filed the petition for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Rex Armstrong, of Bogle & Gates, Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

GRABER, J.

## GRABER, J.

Defendant was convicted of intimidation in the first degree, ORS 166.165(1)(a)(A).[1] He challenges his conviction on the grounds that the evidence was insufficient to convict him and that the statute is unconstitutional. The Court of Appeals affirmed, *State v. Hendrix*, 107 Or App 734, 813 P2d 1115 (1991), and we also affirm.

ORS 166.165(1)(a)(A) provides:

"Two or more persons acting together commit the crime of intimidation in the first degree, if the persons:

"(a)(A)  Intentionally, knowingly, or recklessly cause physical injury to another because of their perception of that person's race, color, religion, national origin or sexual orientation[.]"

Defendant's constitutional challenges to that statute are the same as those rejected in *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992). Here, we address defendant's separate claim that the evidence was insufficient to convict him. Although defendant concedes that he and his codefendants acted together and knowingly caused physical injury to the victims, he contends that the state failed to prove beyond a reasonable doubt that *he* acted because of his perception of the victims' race or national origin.

Defendant accepts as correct this statement of facts by the Court of Appeals:

"The evidence showed that defendant and his three cohorts, Plowman, Neill and Schindler, drove to a Portland store at Southeast 136th and Powell Boulevard to buy beer. Plowman brought a baseball bat and a homemade club wrapped in black plastic tape with him in the car '[i]n case [he] saw somebody who [he] didn't like or somebody who didn't like [him].' Plowman and Neill went inside the store. Defendant and Schindler walked behind to the store to urinate.

"Serafin and Slumano, the victims, arrived at the store in Slumano's vehicle. Serafin wanted to make a telephone call.

---

[1] Defendant and three codefendants were charged in the same indictment with intimidation in the first degree and with assault in the fourth degree, ORS 163.160(1)(a). Defendant and one codefendant waived the right to be tried by a jury and were tried by the court; the other two codefendants were tried by a jury. All four were convicted of both charges. On review, defendant challenges only his conviction of intimidation in the first degree.

Schindler returned to the front of the store, approached Serafin and asked him if he had any cocaine. Serafin, who speaks only a little English, said he did not have anything and started to walk away. Schindler attacked him, beating him on the head and kicking him. Neill joined Schindler in the attack. Plowman and defendant began beating Slumano, who was sitting in his car. Plowman punched Serafin; Schindler kicked him. Serafin fell to the pavement. Defendant pinned Serafin's back to the pavement and repeatedly slammed the store's metal-framed glass entry door against his head. Defendant and his three associates took turns beating Serafin and Slumano, sometimes ganging up three against one. Serafin and Slumano were unarmed and did not fight back. Serafin suffered a gash in his head and minor injuries to his chest, stomach and legs. He had blood coming from his ear and nose. The pain in his head lasted for a week. His finger was injured and interfered with his work for several weeks. Slumano suffered cuts on his lip and near his eyebrow and had blood running from his nose. His jacket was ripped. Both victims suffered swollen eyes.

"During the attack, which lasted about two minutes, eyewitnesses heard Neill shout at Serafin, 'Talk in English, motherfucker.' Plowman and Schindler screamed 'white power' or 'white pride' loud enough to be heard 50 feet away. Plowman yelled, 'Knock it off with us white boys.' When the store clerk told the assailants that she had called the police, Plowman became even more agitated and screamed, 'They're just Mexicans' and 'They're just fucking wetbacks.' As defendant and the three cohorts sped away in their car, someone inside the car shouted 'white power.' " *State v. Hendrix, supra,* 107 Or App at 737-38.

Defendant asserts, first, that under ORS 166.165 (1)(a)(A) *each* defendant must have the specific intent to engage in the prohibited act because of that defendant's perception of the victim's race, color, religion, national origin, or sexual orientation. We agree with that proposition. The statute provides that "the *persons*" who act together commit the crime of intimidation in the first degree if *they* engage in the prohibited act "because of *their* perception of [the victim's] race, color, religion, national origin or sexual orientation." ORS 166.165(1)(a)(A) (emphasis added). We read that phrasing to express the requirement that *each* defendant must have the specific intent described.

■     We also agree with defendant's second assertion, which is that the state must prove the existence of the requisite specific intent beyond a reasonable doubt. *See State v. Harris*, 288 Or 703, 721, 609 P2d 798 (1980) (the state must prove every element of the crime beyond a reasonable doubt). We disagree, however, with defendant's third assertion, which is that the evidence in this record was insufficient to prove beyond a reasonable doubt that he shared the specific intent of his codefendants.

■     In general, circumstantial evidence may be sufficient to prove any element of a crime. *State v. Williams*, 313 Or 19, 24, 828 P2d 1006 (1992). This court has held that evidence showing conduct may permit the trier of fact reasonably to infer intent underlying that conduct. *See State v. Montez*, 309 Or 564, 598, 789 P2d 1352 (1990) (evidence concerning the defendant's acts of cruelty toward the victim permitted the trier of fact reasonably to find that the defendant had the objective of inflicting intense pain on the victim).

■     Here, there is no evidence that defendant himself made any statement about race or national origin or about his specific intent in causing physical injury to these victims. However, defendant arrived at the store with his codefendants who had weapons, observed that one of the victims spoke little English, heard his codefendants' loud and repeated statements concerning the codefendants' and the victims' respective races and national origins, continued to beat the victims while hearing and after hearing those statements, and left with the codefendants after the beating. From that conduct, the trier of fact reasonably could find beyond a reasonable doubt that defendant acted because of his perception of the victims' race or national origin.

    The decision of the Court of Appeals and the judgment of the circuit court are affirmed.