Argued and submitted March 5, 1996, decision of the Court of Appeals affirmed; judgments of the circuit court reversed June 12, 1997

STATE OF OREGON,
*Appellant,*

*v.*

FAITH ERIN CHAKERIAN,
*Respondent.*

(C93-07-34971; CA A83155 (Control))

STATE OF OREGON,
*Respondent on Review,*

*v.*

HANS MICHAEL VON MOHN,
*Petitioner on Review.*

(C93-07-34975; CA A83173)

STATE OF OREGON,
*Appellant,*

*v.*

COLLIN NYLE BEGGS,
*Respondent.*
(C93-07-34970; CA A83174)

STATE OF OREGON,
*Respondent on Review,*

*v.*

MARK S. GOSNELL,
*Petitioner on Review.*
(C93-07-34972; CA A83175)

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROBERT PETER McDONALD, JR.,
*Petitioner on Review.*

(C93-07-34973, CA A83175)
(SC S42481)

938 P2d 756

Rives Kistler, Assistant Attorney General, Salem, argued the cause on behalf of respondent on review. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Savoy Rose Jade, Newport, filed an *amicus curiae* brief on behalf of the Oregon Criminal Defense Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GILLETTE, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

## GILLETTE, J.

In this criminal case, the issue is the facial constitutional validity of ORS 166.015, Oregon's "riot" statute, which provides:

"(1)  A person commits the crime of riot if while participating with five or more other persons the person engages in tumultuous and violent conduct and thereby intentionally or recklessly creates a grave risk of causing public alarm.

"(2)  Riot is a Class C felony."

We hold that the statute is not facially unconstitutional in any respect asserted by defendants.

### BACKGROUND

In a single indictment, the state charged defendants jointly, under ORS 166.015, with one count of riot. Defendants demurred, asserting, *inter alia*, that: (1) ORS 166.015 violates Article I, section 8, of the Oregon Constitution,[1] because the statute restrains expression[2] and does not fall within a well-established historical exception to the Oregon constitutional guarantee of free speech;[3] (2) ORS 166.015 is unconstitutionally overbroad in that it criminalizes expression protected under Article I, section 8;[4] and (3) ORS

---

[1] Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[2] As we have done in the past, we use the terms "speech" and "expression" interchangeably in this opinion to refer to the "free expression of opinion, or * * * the right to speak, write, or print freely on any subject whatever" provided in Article I, section 8, of the Oregon Constitution. *See, e.g., Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 450 n 5, 857 P2d 101 (1993) (illustrating that usage).

[3] In the trial court, defendants also demurred on the ground that ORS 166.015 violates the First and Fourteenth Amendments to the United States Constitution. Those federal free speech claims have not been advanced in this court.

[4] The indictment was written in terms of the statute, without elaboration. We thus do not know what specific operative facts the state will show, if the case is remanded for trial. It follows that, because this case arises out of the trial court's pretrial decision to sustain defendants' demurrer, defendants are unable to assert at this time that the statute is unconstitutional as applied to them. Defendants also challenged the indictment in the trial court on the ground that it was not

166.015 is unconstitutionally vague in violation of Article I, sections 20 and 21, of the Oregon Constitution,[5] and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[6]

The trial court sustained the demurrer, concluding that ORS 166.015 is unconstitutionally overbroad in its reach. Because the trial court further concluded that the constitutional violation could not be avoided in a new accusatory instrument, the court dismissed the riot charge with prejudice. On the state's appeal, the Court of Appeals reversed, holding that ORS 166.015 is not unconstitutional on its face. *State v. Chakerian*, 135 Or App 368, 900 P2d 511 (1995). We allowed defendants' petition for review and now affirm the decision of the Court of Appeals.

1. *Article I, Section 8, Challenge*

■ Defendants argue first that, on its face, ORS 166.015 violates Article I, section 8, of the Oregon Constitution. In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), this court established the framework for determining whether a law, on its face, violates Article I, section 8, of the Oregon Constitution. That framework requires that we first determine whether the challenged provision is on its face "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." 293 Or at 412.

---

definite and certain. ORS 135.630(6). The trial court asserted during the hearing on defendants' demurrer that it would deny the demurrer on that ground. However, the trial court's order does not indicate that the demurrer was denied on that ground. Defendants have not raised on appeal whether the indictment violated ORS 135.630(6), and we do not address that question.

[5] Article I, section 20, of the Oregon Constitution, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 21, provides, in part:

"No *ex-post facto* law * * * shall ever be passed * * *."

[6] The Fourteenth Amendment to the United States Constitution provides, in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *."

Although their brief to this court argued the federal claim, defendants agreed at oral argument that no federal claims are before this court. Therefore, we do not address further defendants' vagueness claim under the federal constitution.

If the statute is not directed to the substance of an opinion or subject of communication, but rather is directed at a harm that the legislature is entitled to proscribe, then a further level of inquiry follows. *Id.* at 414-17. *See generally State v. Stoneman*, 323 Or 536, 543-48, 920 P2d 535 (1996). If the statute, by its terms, targets the harm, but the statute expressly prohibits expression used to achieve that harm, then the statute must be subjected to an overbreadth analysis before it can survive Article I, section 8, scrutiny. *City of Eugene v. Miller*, 318 Or 480, 488, 871 P2d 454 (1994); *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992). That is the second level of the *Robertson* analysis.[7]

■  The first level of analysis may be dispensed with easily. As defined in ORS 166.015, the crime of riot has four elements: A person commits the crime of riot if that person, (1) "while participating with five or more persons," (2) "engages in tumultuous and violent conduct"[8] and (3) "thereby intentionally or recklessly" (4) "creates a grave risk of causing public alarm."

ORS 166.015, by its *terms*, is not directed at speech at all, let alone at restraining the free expression of opinion or the right to speak freely on any subject. Rather, the statute is directed at a harm—the creation of a grave risk of public alarm. ORS 166.015 by its terms proscribes only a certain type of *conduct*—conduct that is "violent and tumultuous." The statute does not fit under level one of *Robertson*.

■  Turning to the second level of analysis, defendants argue that, even if ORS 166.015 is directed at a proscribable harm—creation of a grave risk of public alarm—the statute is overbroad, because it prohibits too much expression in order

---

[7] There is a third level of scrutiny that goes beyond a facial attack on a statute. If the statute targets a harm, but does not refer to expression at all, then the statute still is analyzed to determine whether it violates Article I, section 8, as *applied*. That is the third level of the *Robertson* analysis. *Miller*, 318 Or at 488; *Plowman*, 314 Or at 164. However, as indicated above, we have only a facial challenge before us. 325 Or at 373 n 4.

[8] It is clear under the statute that a person does not commit the crime of riot if he or she merely is part of a group and five *other* members of that group engage in tumultuous and violent conduct that intentionally or recklessly creates a grave risk of causing public alarm. Under the statute, the state must prove that the person charged actually "engage[d] in violent and tumultuous conduct."

to protect against that harm. The pivotal questions, as argued by defendants, are whether that part of ORS 166.015 that proscribes engaging in "tumultuous and violent conduct" forbids making "threats" in all instances, whether making "threats" constitutes protected expression and, if so, whether the court can interpret the statute narrowly to avoid possible overbreadth.[9] Of course, the statute does not itself use the word "threats" at all. Rather, we must consider whether, by proscribing "tumultuous and violent conduct," the legislature intended to proscribe acts that could constitute protected expression under Article I, section 8, of the Oregon Constitution. If it did not, defendants' argument fails.

Defendants' argument that the answer to the foregoing question is "yes" relies on a statement in the Oregon Criminal Law Revision Commission's commentary concerning ORS 166.015.[10] That commentary asserted that the phrase "tumultuous and violent conduct" means "terroristic mob behaviour involving *ominous threats* of personal injury and property damage." Proposed Oregon Criminal Code § 218 (Commentary) at 212 (1970) (emphasis added). It is from that source that defendants attempt to draw the concept of "threats" into the discussion.

Defendants argue that a "threat" is a kind of expression and, therefore, that the type of conduct prohibited by ORS 166.015—tumultuous and violent conduct—must be construed to be expressive in nature.

This court interprets statutory terms under the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that methodology, we look first to the text and context of the statute. If

---

[9] We note that "conduct" itself may be protected expression under Article I, section 8. Artistic conduct, such as dance, and political conduct, such as the carrying of protest signs, are just two of the more obvious forms of conduct that also are protected expression under Article I, section 8. On the other hand, there also is conduct that is not protected expression under the Oregon Constitution. For instance, when a person physically assaults another, such conduct—even if it includes an underlying message or is accompanied by speech—is not protected expression.

[10] The commentary was drafted by the Criminal Law Revision Commission along with its proposed revision of the Oregon Criminal Code. The commentary was available to the legislature throughout its deliberations on the proposed revision, which was adopted in 1971.

text and context yield an unambiguous meaning, we proceed no further. If the answer is not clear after examining the text and context, we then inquire into legislative history. Finally, if the legislative history coupled with the text and context provides no unambiguous answer, this court turns to legal maxims of statutory construction. *Id.* at 610-12.

The text of ORS 166.015 prohibits persons from engaging in "tumultuous and violent conduct." These are words of common usage, to which we typically ascribe their ordinary meaning. *See id.* at 611 (stating rule). "Tumultuous" is defined as:

> "1: marked by tumult: full of commotion and uproar: riotous, stormy, boisterous * * * 2: tending or disposed to cause or incite a tumult * * * 3: marked by violent or overwhelming turbulence or upheaval."

*Webster's Third New Int'l Dictionary*, 2462 (unabridged 1993). The definition of "violent" is:

> "1: characterized by extreme force * * *: marked by abnormally sudden physical activity and intensity * * * 2: furious or vehement to the point of being improper, unjust, or illegal * * * 3: extremely or intensely vivid or loud * * *: unusually intense * * *: unnaturally strong * * * 4: produced or effected by force : unnatural * * * 5: tending to distort or misrepresent * * * 6: extremely excited: emotionally aroused[.]"

*Id.* at 2554. Finally, "conduct" is defined as "behavior in a particular situation or relation or on a specified occasion." *Id.* at 474.

The trial court concluded that the statute can be violated only by means of either speech or expressive conduct. It reached that conclusion by referring to the commentary of the Oregon Criminal Law Revision Commission and by reasoning that every statutory violation will involve communication of a "threat." Defendant asserts that view here, contending that every threat is a communication of some sort.

As we discuss in greater detail below, we conclude that the trial court (and the Court of Appeals) erred in resorting to the commentary to discern the meaning of ORS 166.015. On the other hand, the Court of Appeals also held

that the trial court read the statute too narrowly in concluding that, in all cases, it proscribes making "threats." We agree with that latter proposition. The common definitions of the statute's key terms, quoted above, demonstrate that the statute, on its face, forbids forms of overt criminal behavior that are unattended by speech of any kind. Defendant makes no other argument that the statute is invalid on its face under Article I, section 8. Giving the statute a fair reading in the light of the common definitions of the terms of "tumultuous," "violent," and "conduct," we conclude that the statute refers to physical activity that reasonably is perceived by others as threatening an imminent breach of the peace.[11] That is, the word "threat" may or may not be ambiguous; the statutory text—which does not contain that word—is not.

From the text of the statute alone, it appears that the legislature, in enacting ORS 166.015, intended to proscribe only nonexpressive acts. However, in carrying out this first level of analysis under *PGE*, we also look to the context of ORS 166.025.

As an initial matter, we are confronted with the question whether the commentary is "context" or, rather, should be treated as legislative history. If it is context, we consider it in the initial step of our *PGE* analysis. If it is legislative history, we would turn to it only if the text and context of the statutory phrase were ambiguous.

■ ORS 166.015 was enacted as part of the Oregon Criminal Code of 1971, which was the culmination of a comprehensive effort to revise substantive Oregon criminal law.

---

[11] Of course, it always is possible that "tumultuous and violent conduct" *might* occur contemporaneously with some kind of expression in a particular instance. The idea of "tumult" as being boisterous talk is, for example, the one meant in what is perhaps the single most familiar use of the former word in the English language:

"The tumult and the shouting dies,
The Captains and the Kings depart * * *."

Rudyard Kipling, "Recessional" (1897) in *A Choice of Kipling's Verse* 139 (1941). Any doubt about that meaning is resolved in the light of the fact that Kipling's poem was a sobering reflection on the transient nature of glory, published on the day following the enormous parade in London that celebrated the diamond jubilee of Queen Victoria. Barbara W. Tuchman, *The Proud Tower*, 55 (1965). But, read collectively, the statutory terms that we examine here are a reference to *non-expressive* acts.

While drafting the code, the Criminal Law Revision Commission compiled an accompanying commentary. We consider that commentary to be part of the legislative history of the Code. *See, e.g., State v. Wille*, 317 Or 487, 498, 858 P2d 128 (1993) (discussing Criminal Law Revision Commission commentary on criminal code provision as legislative history). Thus, we do not treat the commentary as part of the context of ORS 166.015.

Context does include other related statutes. *PGE*, 317 Or at 610-11. Such a statute is ORS 166.025, which defines and prohibits the crime of disorderly conduct. ORS 166.015 and 166.025 were enacted in 1971 as closely associated parts of the same act, the Oregon Criminal Code of 1971. Or Laws 1971, ch 743, §§ 218, 220. They are related statutes concerned with public disturbances.

ORS 166.025, as enacted in 1971, provided, in part:

"(1)   A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"(a)   Engages in fighting or in violent, tumultuous, or threatening behavior; or

"(b)   Makes unreasonable noise; or

"(c)   Uses abusive or obscene language, or makes an obscene gesture, in a public place[.]"

The significant difference between the disorderly conduct statute, ORS 166.025, and the riot statute, ORS 166.015, is that, in enacting ORS 166.025, the legislature intended to proscribe much more than just "fighting" and "violent, tumultuous or threatening behavior," because paragraph (c) of ORS 166.025, as enacted in 1971, prohibited the use of "abusive or obscene language" and "obscene gesture[s]." The inclusion of those words in the text indicates that the legislature, in enacting ORS 166.025, intended to proscribe certain expressive conduct. Indeed, it was that specific part of that statute that this court declared "void as contrary to Art I, § 8 of the Oregon Constitution" in *State v. Spencer*, 289 Or 225, 231, 611 P2d 1147 (1980). Thus, a comparison of the differing

wording of ORS 166.015 and 166.025 confirms that the legislature did not intend to reach expression in enacting ORS 166.015.

From our examination of the text and context of ORS 166.015, we find the statute's meaning clear: The legislature did not intend to reach protected expression in prohibiting "tumultuous and violent conduct." Accordingly, we need not proceed further with the *PGE* analysis.

Having determined that ORS 166.015 does not on its face forbid speech, it follows that the statute does not on its face violate rights protected by Article I, section 8. We turn to the question whether the statute nonetheless violates Article I, section 8, on the alternative ground that it is vague.

## 2. *Vagueness Claim*

Defendants also challenge ORS 166.015 by asserting that it is unconstitutionally vague in violation of Article I, sections 20 and 21, of the Oregon Constitution.[12] Specifically, defendants argue that ORS 166.015 is vague to the extent that it prohibits conduct that "creates a grave risk of causing public alarm."

Before reaching the merits, the state argues that this court should not consider defendants' facial vagueness claim, if we conclude (as we have above) that ORS 166.015 is not directed at expression. The state's argument apparently is premised on a belief that, under Oregon law, a facial

---

[12] Defendants argued in the Court of Appeals and to this court that the trial court "ruled" that the statute was not unconstitutionally vague and dismissed that claim. The state has not disputed that characterization, but the record does not appear to support such a conclusion. The trial court's virtually identical orders with respect to each defendant stated only that the statute was unconstitutionally overbroad in its reach. The orders said nothing about vagueness.

Defendants rely on a portion of the transcript in which the trial court stated that it was bound by a previous Court of Appeals determination that the same statute was not unconstitutionally vague. However, it is the trial court's *order* that determines what the trial court ruled, not what the trial judge said during the proceedings. In any case, *after* the colloquy cited by defendants, and after a lunch recess, the trial court modified its earlier conclusion and asserted that the statute might be both overbroad *and* vague.

Despite the fact that the trial court never signed an order that ruled on the issue, we still reach it, because it represents an alternative legal ground that was asserted to the trial court and on which the trial court's ruling in favor of defendants could be sustained.

vagueness challenge generally may not be brought by way of demurrer and that the sole exception to that rule arises when the challenged law is directed at speech. We first consider the validity of the state's premise.

The state argues that this court has considered facial vagueness challenges only in a narrow range of cases in which the statute prohibited, by its terms, some form of communication.[13] We disagree with that argument. Our research has uncovered several cases that did not implicate free speech concerns, but in which the court nonetheless considered the merits of facial vagueness claims. *See, e.g., State v. Farrar*, 309 Or 132, 183, 786 P2d 161 (1990) (considering and rejecting a facial vagueness challenge to an aggravated murder statute); *State v. Cornell / Pinnell*, 304 Or 27, 741 P2d 501 (1987) (upholding an aggravated murder statute against a claim that one of its terms—"torture"—was vague on its face); *State v. Graves*, 299 Or 189, 700 P2d 244 (1985) (striking down a first degree burglary statute on facial vagueness grounds).

■■    This court's case law never has purported to explain under what circumstances a facial vagueness claim may be brought. The only limitation on facial vagueness challenges to which this court has referred is that, to *succeed* on a facial claim, a party must show that a statute is unconstitutionally " 'vague in all of its possible applications.' " *Robertson*, 293 Or at 411 n 8 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 US 489, 494-95, 102 S Ct 1186, 71 L Ed 2d 362 (1982)).[14] In other words, the statute must be shown to specify " 'no [discernable] standard of conduct * * *

---

[13] The state lists three cases as examples: *State v. Moyle*, 299 Or 691, 705 P2d 740 (1985) (statute prohibited telephonic or written *threats*); *State v. Garcias*, 296 Or 688, 679 P2d 1354 (1984) (statute prohibited certain types of *words* or conduct); and *State v. Blair*, 287 Or 519, 601 P2d 766 (1979) (statute prohibited certain types of *communication* by telephone or by writing).

[14] On occasion, the Oregon Court of Appeals has interpreted the limitations on facial challenges more broadly. *See, e.g., State v. Butterfield*, 128 Or App 1, 7, 874 P2d 1339 (1994) (asserting that, "unless the exercise of First Amendment liberties is impaired, vagueness challenges are reviewed solely to determine whether the application of the contested statute to the defendant's conduct violates the 'void for vagueness' doctrine"); *see also State v. Albee*, 118 Or App 212, 216, 847 P2d 858 (1993) (asserting that, where First Amendment rights are not affected, a defendant must show that the statute is unconstitutional as applied to him).

at all.' " *Ibid.* (quoting *Coates v. City of Cincinnati*, 402 US 611, 614, 91 S Ct 1686, 29 L Ed 2d 214 (1971)). A corollary to that limitation is that a party who engages in "conduct that is clearly proscribed" cannot complain that the statute potentially is unconstitutionally vague with respect to others. *Ibid.* (quoting *Flipside*, 455 US at 494-95); *see also Farrar*, 309 Or at 183 (stating that a defendant's "abstract concern about how the statute might be applied to others is irrelevant to the validity of his own conviction"). That must be the case because, if a party's conduct clearly is proscribed by a statute, then that statute by definition cannot be said to be vague in *all* its applications.

From the foregoing, we conclude that defendants are entitled to have the court address their assertion that ORS 166.015 is unconstitutionally vague in all its possible applications, without regard to their individual conduct.

The parties agree that the vagueness issue before this court is limited to a challenge under the Oregon Constitution. Accordingly, we consider only Oregon constitutional law. The court in *Robertson* acknowledged that "the rule against vague penal laws has been rested on various constitutional premises." 293 Or at 408. Recently, this court has noted two primary functions of the vagueness doctrine. One function is to provide notice, with a reasonable degree of certainty, of the conduct that is prohibited. Thus, in *Graves*, 299 Or at 195, this court stated that "[t]he terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties." *See also Plowman*, 314 Or at 160 ("A 'reasonable degree of certainty' about what conduct falls within the statute's prohibition is required; absolute certainty is not."). In addition to providing notice, a second function of the vagueness doctrine is to prevent a judge, jury, or other law enforcer from "exercis[ing] uncontrolled discretion in punishing defendants." *Graves*, 299 Or at 195; *see also Plowman*, 314 Or at 161 (criminal statute should not allow judges and juries unbridled discretion to decide what conduct to punish).

■  Defendants direct their facial vagueness challenge to the phrase, "grave risk of public alarm." They argue that the

phrase is unconstitutionally vague, because it lacks either a requirement that a person's conduct *actually* cause "public alarm" or that the "public alarm" be *objectively reasonable*. Defendants argue that this court found similar deficiencies in a harassment statute in *State v. Blair*, 287 Or 519, 601 P2d 766 (1979).

We disagree. The statute at issue here, ORS 166.015, more closely resembles the amended harassment statute that this court upheld in *State v. Moyle*, 299 Or 691, 693, 705 P2d 740 (1985).[15] That statute was a modified version of the statute struck down previously in *Blair*. In addressing the infirmities noted by this court in *Blair*, the legislature changed the statute by replacing the word "communicates," which had been a problem in *Blair*, with the phrase "subjects another to alarm" and by limiting the type of conduct that potentially could violate the statute to "threat[s] to inflict serious physical injury on that person or to commit a felony involving the person." The amended statute also eliminated the requirement that the conduct merely be "likely" to cause annoyance or alarm, replacing that standard with a requirement that the conduct "reasonably would be expected to cause alarm."

Defendants in *Moyle* challenged that statute on the grounds that the terms "alarm," "threat reasonably expected to cause alarm," "serious physical injury," and "felony" were unconstitutionally vague. This court concluded that those terms "adequately inform[ed] potential defendants of the prohibited conduct, and they d[id] not delegate uncontrolled discretion to a judge or jury to punish or withhold punishment." 299 Or at 706-07.

Similarly, the phrase that defendants challenge in this case, "grave risk of public alarm," when viewed in the

---

[15] The statute at issue in *Moyle*, ORS 166.065(1)(d) (1983), provided:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, the actor:

"* * * * *

"(d) Subjects another to alarm by conveying a telephonic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm[.]"

light of the requirement that the conduct causing the risk must be "tumultuous or violent," adequately informs citizens of the prohibited conduct. The statute does not, it is true, specifically require that the "risk of public alarm" that is created be "reasonable," as the statute did in *Moyle*. But we believe that that element is imported into the statute by the use of the adjective, "grave." A risk is not "grave," in our view, unless it would be perceived as reasonably likely to occur. Thus, the statute does not delegate uncontrolled discretion to a judge or jury to punish or withhold punishment. Specifically, the challenged phrase is very like the one that this court sustained in *Moyle*.

We hold that ORS 166.015 is not unconstitutionally vague and does not violate Article I, sections 20 and 21, of the Oregon Constitution.

For the reasons expressed above, the trial court erred in sustaining defendants' demurrer on the ground that ORS 166.015 is overbroad in violation of Article I, section 8, of the Oregon Constitution. Neither is the statute unconstitutional on any other ground asserted by defendant.

The decision of the Court of Appeals is affirmed. The judgments of the circuit court are reversed.