KISTLER, J.,
concurring.
I join the majority’s opinion but write separately to address one aspect of defendant’s overbreadth argument. ORS 163.750(1) makes it a crime to violate a stalking protective order if (a) the person has been served with a copy of the order, (b) the person “intentionally, knowingly or recklessly engages in conduct prohibited by the order,” and (c) if the prohibited conduct was communicative, the conduct created a “reasonable apprehension regarding the personal safety of [the] person protected by the [stalking protective] order.”
In this case, the stalking protective order prohibited defendant from having any contact, communicative or otherwise, with the victim. As the majority notes, defendant does not argue that the stalking order in this case violates Article I, section 8, nor would such an argument be an easy one to make. The stalking order that gives rise to this case is *684 speech-neutral. It prohibits defendant from having “any contact” with the victim without regard to what defendant might or might not say, or even if he says nothing at all. Cf. United States v. O’Brien, 391 US 367, 377, 88 S Ct 1673, 20 L Ed 2d 672 (1968) (explaining when a speech-neutral law may be applied to expressive conduct consistently with the First Amendment). Defendant also does not argue, correctly in my view, that ORS 163.750 would violate Article I, section 8, if all that statute did was to make it a crime to violate the stalking protective order in this case. Because a stalking protective order that prohibits a person from having any contact with the victim does not violate Article I, section 8, punishing a person for violating that order cannot give rise to an Article I, section 8 violation.
Defendant appropriately focuses his argument more narrowly on ORS 163.750(1)(c). As noted, that subsection provides that, when the conduct that violates a stalking protective order involves communication, the state must show that that “conduct created reasonable apprehension regarding the personal safety of a person protected by the order.” Defendant argues that, because subsection (1)(c) makes speech an element of the crime, that subsection must be scrutinized for overbreadth. See State v. Plowman, 314 Or 157, 164, 838 P2d 558 (1992) (quoting State v. Robertson, 293 Or 402, 417-18, 649 P2d 569 (1982)). Defendant contends that, to avoid overbreadth, we should construe subsection (1)(c) narrowly, in the same way that this court construed a comparable subsection of a related statute in State v. Rangel, 328 Or 294, 306, 977 P2d 379 (1999).
Although the subsection at issue in this case and the subsection at issue in Rangel are worded similarly, they serve different functions. The subsection at issue in Rangel defined the predicate acts necessary to prove the crime of stalking. See id. at 296 (setting out ORS 163.732(1)(c)). By contrast, the subsection at issue in this case narrows the class of prohibited conduct that will result in criminal liability under ORS 163.750. If, as explained above, Article I, section 8, permits the state to punish defendant for any conduct that violates the stalking protective order in this case, Article I, section 8, does not prohibit the state from punishing defendant for only some of that conduct — i.e., noncommunicative *685 conduct and communicative conduct that causes reasonable apprehension regarding the personal safety of persons protected by the stalking protective order.
To be sure, the fact that the state may prohibit an entire category of speech does not mean that it can distinguish within that category on the basis of content of the speech or its viewpoint. See R.A.V. v. St. Paul, 505 US 377, 391, 112 S Ct 2538, 120 L Ed 2d 305 (1992) (holding that, even though the city could prohibit fighting words generally, it could not prohibit only those “ ‘fighting words’ that insult, or provoke violence, ‘on the basis of race, color, creed, religion, or gender’ ”). Subsection (1)(c), however, does not distinguish among prohibited contacts on that basis; it does not punish only those contacts that convey a particular message or advocate a specific viewpoint. Rather, subsection (1)(c) distinguishes among prohibited contacts based on whether the contact “created reasonable apprehension regarding the personal safety of a person protected by the [stalking protective] order.” That distinction is, in my view, a permissible one. With that observation, I concur in the majority’s opinion.