Argued and submitted November 14, 2007, Newberg High School, Newberg,
affirmed March 19, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOHN COBURN RICH,
*Defendant-Appellant.*

Benton County Circuit Court
V0500057; A130233

180 P3d 744

Andy Simrin argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Ortega, Judge, and Collins, Judge pro tempore.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant was charged with disorderly conduct for intentionally causing "public inconvenience, annoyance or alarm" by making "unreasonable noise," ORS 166.025(1)(b), during an argument with a police officer in the Benton County Courthouse. At trial, defendant argued that prosecuting him for violating the statute violated the free expression guarantee of Article I, section 8, of the Oregon Constitution.[1] The court rejected that argument, and defendant was convicted. He renews his argument on appeal. We affirm.

The relevant facts are not in dispute. Defendant, an attorney, was at the Benton County Courthouse to represent a client, identified only as "Vito," in a criminal matter. Shortly before the hearing was to begin, defendant learned that Benton County authorities had a warrant for Vito's arrest. Defendant believed that the warrant should have been rescinded, and he found a judge in the courthouse who agreed to do so. When defendant returned to the courtroom for Vito's hearing, he told the prosecutor that the warrant was no longer in effect.

During the subsequent hearing, defendant cross-examined a prosecution witness, Officer Howrey. When the hearing ended, Howrey encountered defendant and Vito in the hallway and informed Vito that he was not free to leave because there was an outstanding warrant for his arrest. Defendant informed Howrey that the warrant was no longer in effect; Howrey wanted to verify that fact by calling the court. An argument between defendant and Howrey ensued, during which defendant stood very close to Howrey and yelled, "[You're] an asshole. I will fucking sue you and sue the department." Defendant's yelling continued for about one minute; he repeatedly called Howrey an "asshole" and threatened to bring legal action. Defendant's voice was loud enough to be heard in the hallway and in offices that opened onto it. Some courthouse employees who overheard the argument

---

[1] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

stopped their work, and one testified that she was "alarmed" and that "[i]t seemed unusual for the courthouse." The confrontation ended when Howrey took Vito by the arm and escorted him to a phone, where the officer made a call and confirmed that the warrant had been rescinded.

Defendant was ultimately arrested and charged with disorderly conduct under ORS 166.025(1)(b). That statute provides:

> "A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:
>
> "* * * * *
>
> "(b) Makes unreasonable noise."

The state elected to treat the case as a violation, as authorized by ORS 161.566. Before trial, defendant filed a "Motion to make more definite and certain, or in the alternative motion *in limine*." The motion requested that the court order the prosecution to clarify whether the "unreasonable noise" that defendant was accused of having made was or was not speech, or, alternatively, to order that the prosecution could not present any evidence involving defendant's speech. In a memorandum of law supporting the motion, defendant argued that, if the "unreasonable noise" was speech, then it was necessarily protected under Article I, section 8, of the Oregon Constitution, and the state was precluded from basing a prosecution on it: "If the conduct that is the basis for the charge is in fact speech, the charging instrument should so state. If speech is the basis for this prosecution and is so pled, the information is ripe for demurrer." The court denied the motion. A trial to the court ensued, and defendant was convicted.

On appeal, defendant raises four assignments of error: that the court erred in denying his motion to make more definite and certain, in denying his motion *in limine*, in denying his motion for a judgment of acquittal, and in rendering judgment for the state. As defendant acknowledges, all of these assignments are based on a single contention: that ORS 166.025(1)(b) is unconstitutional insofar as it

imposes criminal sanctions for harm that can, in some circumstances, be caused by speech.

That is not the law. Under cases interpreting Article I, section 8, many laws that restrain speech are not unconstitutional.[2] Oregon free speech jurisprudence divides laws that might implicate expression into three categories: laws that explicitly and in terms prohibit speech itself, regardless of whether the speech causes or is an attempt to cause harm; laws that prohibit the accomplishment of, or attempt to accomplish, harm and specify that one way that the harm might be caused is by speech; and laws that, without reference to or specification of speech, prohibit the accomplishment of, or attempt to accomplish, harm that, in some circumstances, could be caused by speech. *State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993). An example of the first kind of law is a statute prohibiting obscenity. *See State v. Henry*, 302 Or 510, 732 P2d 9 (1987). Such laws are facially unconstitutional "unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982). An example of the second kind of law is a statute prohibiting one person from using a verbal threat to coerce another person into doing something she does not want to do. *Id*. at 415. Such laws are presumptively constitutional unless they are incurably overbroad. *Id*. at 417-18. An example of the third type of law is a trespass statute that, although it does not mention expressive activity, could be enforced against political protesters engaging in political expression. *See City of Eugene v. Lincoln*, 183 Or App 36, 50 P3d 1253 (2002). Such laws are facially constitutional; whether applying them violates Article I, section 8, depends necessarily on the facts of a particular case. *Robertson*, 293 Or at 417.

Thus, defendant's contention—that is, that he could not be tried for violating ORS 166.025(1)(b) if the basis of the

---

[2] By "law," we include statutes, rules, ordinances, and other vehicles of state action. By "speech," we mean any genre of constitutionally protected expression.

violation was speech—cannot withstand even cursory scrutiny. A law punishing specified speech *per se* can be constitutional if the law falls within a well established historical exception to free speech guarantees. A law punishing harm, but specifying speech as one method of inflicting that harm, is constitutional unless it is incurably overbroad. And a law punishing harm but not, in express terms, implicating speech at all is constitutional unless it is applied unconstitutionally.

ORS 166.025(1)(b) obviously does not prohibit or restrain uttering particular specified words or expressive acts. Rather, it prohibits harm: unreasonable noise intended to cause, or recklessly running the risk of causing, inconvenience, annoyance, or alarm. Whether the statute is in the second *Robertson* category (a harm-focused law expressly regulating speech) or third category (a harm-focused law that does not expressly regulate speech but could be enforced in such a way as to do so) presents a slightly more difficult question. In *City of Eugene v. Lee*, 177 Or App 492, 501, 34 P3d 690 (2001), we examined a city ordinance that was identical to ORS 166.025(1)(b) (except for the words "in the second degree"), and concluded that it "arguably" could be in either the second or third category. We declined to resolve that question, however, because we concluded that, regardless of how it was resolved, the "defendant could not constitutionally be convicted under that subsection." *Id.* at 502.

We now hold that ORS 166.025(1)(b) is a statute in the third *Robertson* category. We reach that conclusion because we interpret the term "unreasonable noise" in the statute, insofar as it might refer to noise caused by speech, to refer only to its noncommunicative elements. The statute, in other words, prohibits noise that is "unreasonable" in volume, duration, etc. It is a classic time, place, or manner law. If the regulated noise happens to be speech, then enforcement is unconstitutional only if the enforcement is directed toward the speech's content and not its noncommunicative elements. *Lincoln*, 183 Or App at 43 ("We must therefore decide, in this as-applied challenge, whether the city's enforcement of the criminal trespass statute against defendant had as its objective the prevention of some harm within its power to prevent or whether its objective was to prevent protected speech.").

That interpretation of the statute, although not the only one, is highly plausible; generally, when we object to "noise" on the ground that it is "unreasonable," we are not objecting to its expressive message, but to its volume, duration, timing, or the like. The text of the statute, in other words, indicates (albeit not conclusively) that "noise" refers to sound and not expression.

The context of ORS 166.025(1)(b), however, points—again, not conclusively—in the opposite direction. The same session of the Legislative Assembly that enacted ORS 166.025(1)(b) also enacted Oregon Laws 1971, chapter 452, a comprehensive statutory scheme regulating noise. In *Lee,* 177 Or App at 501 n 6, 502, we suggested that, because provisions of the Eugene City Code outside of the disorderly conduct ordinance contained "extensive regulations of the volume, duration, location and timing of sound," the disorderly conduct ordinance itself probably did *not* refer to those elements of speech. In other words, we suggested that one might infer from the context of the city's disorderly conduct ordinance that "unreasonable noise" in that ordinance did *not* mean only noncommunicative noise. The apparent assumption underlying that inference is that the city would not enact two ordinances governing the same harm.

The same inference could be seen to operate in the present case. However, even in *Lee,* the inference was only a strong suggestion, *id.* at 501 n 6, and a significant difference between that case and this one weakens that suggestion. It might be reasonable to presume that those who enacted the section of the Eugene City Code regulating unreasonable noise under the disorderly conduct ordinance were aware of a preexisting section regulating the same subject and that they intended the two not to overlap; it is significantly less reasonable to presume that a legislator who voted for the bill containing ORS 166.025(1)(b), Oregon Laws 1971, chapter 743, was aware that one of its 433 sections regulated the same thing that the legislature was also considering regulating in the noise control bill. It is also significant that the legislature's noise control bill did not, itself, create any substantive regulations; rather, it authorized a state agency to do so.

Or Laws 1971, ch 452. The regulations themselves, OAR 340-035-0005 to 340-035-0100, were not promulgated until 1974.[3] Thus, although statutes on the same subject as the disorderly conduct statute suggest that "unreasonable noise" might refer to the communicative aspect of speech, that suggestion is extremely weak.

Like the text and context of ORS 166.025(1)(b), the legislative history is inconclusive. ORS 166.025 was enacted as part of the Oregon Criminal Code of 1971. The language of ORS 166.025 that is relevant to this case remains the same as the 1971 version. The only item of legislative history that discusses the term "unreasonable noise" is the commentary to the Oregon Criminal Code, which was compiled by the Criminal Law Revision Commission. *See State v. Chakerian*, 325 Or 370, 379, 938 P2d 756 (1997) (discussing the commentary to the Oregon Criminal Code). That commentary explains:

> "Paragraph (b) prohibits making 'unreasonable' noise. The application of this provision depends upon the circumstances under which the challenged activity is performed. Noise eminently reasonable under certain circumstances may be highly unreasonable under other circumstances, *e.g.*, daytime v. nighttime; residential area v. industrial area."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 220, 214 (July 1970). The commentary indicates that the reasonableness of noise depends on the time, place, and manner in which it occurs, rather than its content. However, this single item of legislative history does not entirely eliminate the possibility that content might be a factor in determining unreasonableness.

---

[3] It is also worth noting that,

"[i]n 1991, the Legislative Assembly withdrew all funding for implementing and administering * * * [the Department of Environmental Quality's] noise program. Accordingly, the Commission and the Department have suspended administration of the noise program[.]"

OAR 340-035-0110.

What does eliminate that possibility is our strong prudential interest in construing statutes so as to avoid constitutional infirmity. That interest derives from an obligation rooted in respect for the coequal branches of government, and it gives the rule of construction a status superior to ordinary maxims. As we recently noted in *State v. Rodriguez*, 217 Or App 24, 34, 175 P3d 471 (2007), "[T]he avoidance canon is commonly invoked when there is even a tenable argument of unconstitutionality." Here, if we were to construe "unreasonable noise" in ORS 166.025(1)(b) to include speech that is unreasonable because of its content, as opposed to its time, place, or manner, the statute would violate Article I, section 8, because it would be incurably overbroad. *Lee*, 177 Or App at 501. That is so because a significant amount of unreasonably obscene, unreasonably insulting, unreasonably shocking, unreasonably offensive, and unreasonably insensitive expression that is intended to cause inconvenience, annoyance, or alarm, is constitutionally protected.

■ The statute under which defendant was convicted, then, restrains speech based on its volume, duration, location, and the like. It is therefore a content-neutral statute that "focuses on forbidden effects, but without referring to expression at all." *Plowman*, 314 Or at 164. Thus, like. the criminal trespass ordinance at issue in *Lincoln*, the disorderly conduct statute proscribing unreasonable noise, although content neutral, can be challenged when its application restrains expression, and will be deemed to be unconstitutionally applied when the application was motivated, not by a desire to inhibit the noncommunicative elements of the activity, but by the desire to stifle expression. Thus, the outcome of this case depends on whether defendant was arrested and convicted because of the volume, duration, place, or manner of his words, or because his words were obscene, offensive, "annoying," "alarming," or the like.

The trial court made no formal findings of fact. It did note, in rendering its verdict, that defendant engaged in "communication" and called Howrey "an asshole":

"I am going to find you guilty, Mr. Rich, of the offense here. I do find * * * that you did make an unreasonable noise, and that was the communication with Mr. Howrey,

including the calling of him an asshole either once or twice, or however many times it was, and I find it very clear that that did create the risk of public inconvenience, annoyance, and alarm by the testimony of the two courthouse staff I think who were there, and from the testimony of the deputy district attorney who was there."

However, the parties framed the central factual issue as whether defendant was arrested and convicted because the content of his speech was offensive, or because its noise level disturbed workers in the courthouse. The state presented witnesses who overheard defendant's speech, and their testimony referred to its volume, its location, and other noncontent elements. No witness testified that he or she was alarmed, inconvenienced, or annoyed by the words that defendant was using; they testified, rather, that the volume created a disturbance. Thus, in context, the court's reference to "communication" and to defendant's calling Howrey "an asshole" do not indicate that the court based its ruling on the content of defendant's speech. Rather, they simply explain what the content was. The second "that" in the court's phrase, "I find it very clear that that did create the risk," refers back to "unreasonable noise," and not "the calling of him an asshole."

The parties agreed that, if the basis of the charge against defendant was the communicative content of his speech, he had to be acquitted, and if the basis was the speech's noncommunicative elements, he had to be convicted. The court understood that premise. Each party presented evidence supporting its position and the court ruled in favor of the state. We therefore conclude that the court necessarily found that the disorderly conduct statute was applied against defendant because of the noncommunicative elements of his speech. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). That enforcement did not violate his rights under Article I, section 8.

Affirmed.