Argued and submitted May 8, 2008, affirmed February 25, 2009

Robert J. HAGEL,
*Petitioner,*

*v.*

PORTLAND STATE UNIVERSITY,
*Respondent.*

Portland State University
A126321

203 P3d 226

Ann B. Witte argued the cause and filed the briefs for petitioner.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Petitioner seeks judicial review of a final order of Portland State University (PSU) that expelled petitioner as a student based on a number of incidents in which his conduct violated the Code of Student Conduct and Responsibility (Code) and the PSU Housing Standards of Residence (SR). He raises two assignments of error on judicial review: (1) that PSU lacked jurisdiction under its administrative rules to proceed on all but five of the charges against him because they involved conduct that occurred more than six months before the date of his last enrollment at PSU and (2) that two of the five charges (charges 3 and 4) on which the order expelling him was based were constitutionally infirm. Because PSU based its final order only on conduct that occurred within six months of the date of petitioner's last enrollment, we decline to address petitioner's first assignment of error. We also reject, without discussion, his second assignment of error to the extent that he argues that charge 3, which involved petitioner's possession of guns in his dormitory room was a constitutionally invalid basis for his expulsion. We write only to address petitioner's argument that charge 4, which involved petitioner's statements that he intended to harm a PSU employee, constituted protected speech under Article I, section 8, of the Oregon Constitution, and, thus, cannot form a basis for discipline. We review for legal error, ORS 183.482(8)(a), and conclude that PSU did not violate Article I, section 8, when it concluded that petitioner violated its rules by engaging in the conduct alleged in charge 4. Accordingly, we affirm.

The relevant facts are not in dispute. Petitioner was a student at PSU beginning in fall 2001. During his time there, he rented a dormitory room in the Ondine student housing facility. While living in the Ondine, petitioner had had contact with the assistant director of residence life (assistant director) on multiple occasions regarding petitioner's conduct, including a July 2004 flooding incident in the Ondine for which petitioner was believed to have been responsible. The assistant director, who oversaw issues relating to conduct in student housing on the PSU campus, was

required to live on campus as part of his job, which he did with his partner and their young child.

In September 2004, petitioner told two acquaintances that he wanted to kill or harm the assistant director and his family, stating specifically that he knew where the assistant director and his family lived, and that he wanted to take a baseball bat or a Mossberg shotgun to the assistant director's knees. On previous occasions, petitioner had shown both acquaintances guns and ammunition that he kept in his room. Several days after making those statements, petitioner instigated a physical altercation with the two acquaintances on an unrelated matter. In reporting that incident to a PSU public safety officer, the acquaintances reported petitioner's comments about the assistant director and his family to the officer and to the director of residence life, telling them that they were afraid for the assistant director's and their own safety. Soon after, the director of public safety at PSU and the dean of students told the assistant director about the comments that petitioner had made and recommended that the assistant director and his family live off campus for a few days. The assistant director agreed, moved his family to an undisclosed location, and obtained a temporary restraining order against petitioner.

Based on that incident and other conduct by petitioner, PSU initiated a contested case hearing with its student conduct committee (committee) in January 2006, in which it accused petitioner of various violations of the Code and of the SR.[1] Among those charges, charge 4 alleged that petitioner "made specific threats to harm" the assistant

---

[1] All references in this opinion to Oregon Administrative Rules refer to the versions that became effective on October 22, 2002.

PSU alleged a total of 11 charges against petitioner at the contested case hearing. Petitioner challenged PSU's jurisdiction to proceed to a hearing on six of those charges, claiming that the conduct prompting the six charges occurred beyond a six-month limitation set by the relevant rule in effect at the time of his alleged conduct. *See* OAR 577-031-0131(3). PSU subsequently amended that rule to eliminate the limitation period; petitioner further argued that a retroactive application of the amended rule was improper.

PSU maintained that its application of the amended rule was proper; nonetheless, in its final order, it imposed its expulsion sanction based only on the five charges that petitioner conceded were timely brought.

director and his family in violation of the Code as found in OAR 577-031-0135(1),[2] OAR 577-031-0136(1), (7), and (9),[3] and in violation of SR sections 3.01(1) and (14).[4] Several witnesses involved in university public safety and administration corroborated that petitioner had made those statements, based on the acquaintances' reports to them. In addition, the assistant director testified that, when he learned of petitioner's statements, he feared for his and his family's safety.

---

[2] OAR 577-031-0135(1) lists conduct proscribed by the State Board of Higher Education and is substantively identical to OAR 577-031-0136(1).

[3] OAR 577-031-0136 provides, in part:

"Proscribed Conduct by Portland State University

"The following constitutes conduct as proscribed by Portland State University for which a student or student organization or group is subject to disciplinary action:

"(1) Obstruction or disruption of teaching, research, administration, disciplinary procedures or other University activities, including the University's public service functions or other authorized activities on University-owned or -controlled property * * *.

"* * * * *

"(7) Behavior that constitutes a clear and present danger to an individual or to other individuals on University-owned or -controlled property.

"* * * * *

"(9) Harassment, which includes but is not limited to:

"(a) Verbal or physical conduct by an individual based on another individual's age, ability, national origin, race, marital status, religion, sex or sexual orientation that interferes or prevents the person from conducting his or her customary or usual affairs, puts the person in fear of his or her safety, or causes the person to suffer actual physical injury;

"(b) Conduct less than a physical attack or interference with a person, such as hazing or threatening action, which is intended to subject another person to offensive physical contact, physical injury, property damage, or cause physical impact, such as making threatening phone calls, sending or posting (electronically or otherwise) threatening letters, or the vandalism or misappropriation of a person's property."

[4] At the time of petitioner's conduct, SR sections 3.01(1) and (14) provided:

"3.01 Endangering Self or Others

"1. Behavior that endangers or disturbs others' or one's own personal safety is prohibited. This includes intentionally, recklessly, or negligently causing physical, mental[,] or emotional harm to any person.

"* * * * *

"14. Intentional infliction or threatened physical injury and/or verbal harassment to/of any person where it is reasonable that: such a threat was intended for the complainant, there was an opportunity present for the threat to be acted upon, and the accused person had the desire to act on the threat[,] is prohibited."

Petitioner, who testified at the hearing, acknowledged that he had made derogatory comments to his acquaintances about the assistant director but denied that he had threatened to kill or harm the assistant director or his family or had any intention of doing so.

The committee concluded that petitioner's conduct in charge 4 violated the Code and SR provisions under which he was charged. Based on that violation and others committed by petitioner, the committee recommended to the PSU president that petitioner be expelled and required to pay restitution for damage that he had caused to property in the Ondine. The president considered the committee's recommendation in light of all five charges that the parties agreed were within PSU's jurisdiction and adopted only the recommendation that petitioner be expelled. He issued an order to that effect.

Petitioner seeks judicial review of that order,[5] arguing that charge 4 could not be a basis for punishment under Article I, section 8, of the Oregon Constitution, because his comments regarding the assistant director were never made directly to the assistant director nor to anyone whom petitioner reasonably expected to communicate those threats to the assistant director. In advancing that argument, petitioner invokes *State v. Moyle*, 299 Or 691, 704, 705 P2d 740 (1985), a case in which the Oregon Supreme Court upheld a criminal harassment statute against an Article I, section 8, challenge where the statute required, among other things, that the actor directly threaten the victim. PSU argues that it

---

[5] Petitioner specifically assigns error to the committee's denial of his motion to dismiss the hearing on charge 4. Petitioner's motion was based on a claim that the Code, facially and as applied to charge 4, violates Article I, section 8, of the Oregon Constitution. PSU argues that petitioner's failure to assign error to the final order adopting the committee's prehearing decision to deny the motion means that the merits of the committee's ruling are not properly before us. In addition, PSU argues that, because petitioner does not assign error to the findings of rule violations or to the sanction imposed by PSU, the assignment of error presents nothing for us to review.

Petitioner's assignment of error to the committee's denial of his motion is not improper, considering that the final order expressly adopted the committee's denial of the motion. Further, petitioner's assignment of error does not require him to challenge the findings or the sanction imposed in the final order; rather, we understand petitioner to challenge the constitutionality of PSU's disciplinary rules as applied to him in charge 4.

did not violate petitioner's free speech rights under Article I, section 8, because petitioner's threats instilled fear in the assistant director and were objectively likely to be carried out.

Article I, section 8, of the Oregon Constitution provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

As a general matter, we assess Article I, section 8, challenges under the framework established in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). That framework identifies three categories of laws implicating Article I, section 8. The first category of laws includes those aimed at the content of speech without regard to whether the speech causes harm, such as a statute prohibiting obscenity. *State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993); *State v. Rich*, 218 Or App 642, 646, 180 P3d 744 (2008). Those laws violate Article I, section 8, unless the scope of the restraint on speech is wholly confined within a well-established historical exception to the free speech protections originally guaranteed in the federal or state constitution. *Robertson*, 293 Or at 412. The second category of laws comprises those aimed at "forbidden effects" that expressly restrict expression in order to prevent the forbidden effects. We assess laws in that category for facial overbreadth. *Id.* at 416-17. The court in *Moyle* assessed the criminal harassment statute, which prohibited causing alarm in others through verbal threats, for facial overbreadth. 299 Or at 704-05. Finally, the third category encompasses laws aimed at "forbidden effects" without referring to speech; we assess those laws on an as-applied basis. *Robertson*, 293 Or at 417. An example of a law in that category is a disorderly conduct law that restricts an actor from causing public alarm through "unreasonable noise" without referring to the communicative content of the noise. *See Rich*, 218 Or App at 647.

The first step under the *Robertson* framework requires us to consider each of the challenged provisions, classify it under one of the three *Robertson* categories, and

apply the prescribed analysis. Here, PSU concluded that petitioner's conduct in charge 4 violated six provisions of the Code and its SR. Accordingly, if *any* of those six provisions are constitutionally valid under the appropriate analysis set forth in *Robertson,* then petitioner's conduct in charge 4 violated the university's rules and properly remains one of the five charges on which PSU could base its expulsion. If, however, we determine that PSU lacks authority to punish petitioner under *all* six of those provisions, then charge 4 could not be part of the group of charges that PSU considered in imposing its sanction against petitioner. If that is the case, we would then need to reverse and remand the final order for reconsideration based on the remaining charges, because the record does not indicate the weight that PSU gave to charge 4 in deciding to expel petitioner.

Accordingly, we begin with OAR 577-031-0135(1) and OAR 577-031-0136(1), the relevant portions of which describe punishable conduct as "[o]bstruction or disruption of teaching, research, administration, disciplinary procedures or other University activities * * *." Those rules focus on forbidden effects, that is, "[o]bstruction or disruption" of university activities, without reference to expression. Thus, those rules fall within the third *Robertson* category, and, accordingly, we assess whether PSU constitutionally applied them to petitioner.

So framed, we understand the issue to be whether PSU violated petitioner's free speech rights under Article I, section 8, by expelling him as a student for the statements that he made to acquaintances of his desire to harm or kill the assistant director and his family, statements that, under the circumstances in which they were made, led PSU to move the assistant director and his family off campus for their safety, thereby disrupting PSU's operations. We conclude that it did not.

In isolation, petitioner's statement to acquaintances that he wanted to harm or kill the assistant director and his family might not provide a constitutionally valid basis for PSU to expel petitioner. The statements were not made to the assistant director or his family, and, as petitioner suggests,

he may not have intended the statements to be communicated to anyone other than the acquaintances to whom he made them.

Nevertheless, the statements must be viewed in context. Petitioner harbored a deep animus toward the assistant director, whom he thought was "out to get him." When he expressed his desire to harm or kill the assistant director and his family, he gave specific details about how he might do that and said that he knew where they lived on campus. Furthermore, petitioner kept guns and ammunition in his dormitory room in violation of PSU rules; he displayed those guns to acquaintances; and he got into an altercation with those acquaintances that led them to tell PSU officials that they feared that petitioner would harm them and the assistant director. In light of that information, PSU officials concluded that they should ask the assistant director and his family to move off campus for their safety, which they did.

We cannot say that PSU officials acted unreasonably in responding as they did to petitioner's stated desire to harm or kill the assistant director and his family. Consequently, the statement did disrupt PSU activities. Furthermore, we cannot identify a relevant privilege or principle that would operate to prevent PSU from expelling petitioner as a student for causing that disruption. Hence, we conclude that PSU did not violate Article I, section 8, by finding in charge 4 that petitioner's statements about his desire to harm or kill the assistant director and his family disrupted PSU activities.

We conclude that PSU did not err in concluding that petitioner, by engaging in the conduct alleged in charge 4, violated OAR 577-031-0135(1) and OAR 577-031-0136(1). Further, its enforcement of those rules against petitioner did not violate petitioner's rights under Article I, section 8. In light of that conclusion, we need not—and do not—address the constitutionality of the other rules that PSU found petitioner to have violated under charge 4.

Affirmed.