HADLOCK, J.
*772 Defendant appeals from a judgment of conviction for second-degree disorderly conduct for recklessly creating a risk of public inconvenience, annoyance, and alarm by making unreasonable noise. He assigns error to the trial court's denial of his motion for judgment of acquittal, contending that the disorderly conduct statute, ORS 166.025(1)(b), violates both Article I, section 8, of the Oregon Constitution and the First Amendment of the United States Constitution as applied to his expressive conduct.[1] We disagree and, accordingly, affirm.
In considering a trial court's ruling on a motion for judgment of acquittal, we state the facts in the light most favorable to the state, reviewing "to determine whether a rational trier of fact * * * could have found the essential element of the crime beyond a reasonable doubt." State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).
Two days before defendant was arrested, Tillamook Police Sergeant Bomer, along with Officer Greiner, responded to a noise complaint and encountered defendant standing on the sidewalk in front of a Fred Meyer store using an "electrified" bullhorn to preach to passersby. Bomer read the disorderly conduct statute to defendant and explained to him that he could say what he wanted but that he would need to do so without using the bullhorn. Defendant expressed skepticism that the statute applied to his conduct. Bomer decided not to cite defendant at that time, and, as she and Greiner walked back to the patrol car, defendant resumed using the bullhorn.
Two days later, on Christmas Eve, defendant returned to the sidewalk in front of Fred Meyer with a second man and again used the bullhorn to preach. Greiner's wife was visiting Fred Meyer and could hear defendant from inside her car, parked approximately 50 feet away, when she turned off her engine. Although she did not know what defendant was saying, she found him annoying and distracting, and *773 she complained to her husband about the noise. Greiner and Officer Olson responded to the scene. In accordance with an instructional email that had been sent out to the department, the officers did not immediately approach defendant. Instead, Greiner made audio recordings from three positions located across Highway 101 from Fred Meyer and approximately 300 feet from defendant-the entrance to a hotel, the restaurant at that hotel, and a gas station. Although the recording does not provide a listener with a way to discern how others would have experienced the volume of defendant's amplified speech at the time, people from each location testified at trial to having heard defendant from across the highway. Indeed, an employee of the hotel testified that she heard defendant from inside the hotel for "[t]he better part of [her] shift, which was eight hours." That hotel employee added that guests complained about defendant's *344 noise and that defendant was so loud that "it was hard to hear on the phone." An employee from the gas station also testified to hearing defendant over the station's intercom system. A Fred Meyer employee testified that customers were complaining about defendant. The only witnesses who testified to understanding what defendant was saying were his pastor, who stopped nearby for a short period, and defendant's wife, who could understand defendant only if she "was parked real close and [had her] window rolled down."
When Greiner and Olson contacted defendant, Olson noted that the bullhorn's volume was set "fully up." Olson informed defendant that, while he was "okay to speak [his] mind," his volume was unreasonable. After some debate, Olson told defendant that Olson would be seizing the bullhorn and that, if defendant did not surrender the bullhorn, he would be arrested. The officers ultimately arrested defendant, who was charged with violating ORS 166.025 (1)(b) by "recklessly creat[ing] a risk of public inconvenience, annoyance and alarm by making unreasonable noise."[2]
*774 At the close of the state's case in the bench trial that followed, defendant moved for a judgment of acquittal. The court denied that motion. After making detailed findings of fact, the court determined that defendant had been arrested for making unreasonable noise rather than for the content of his speech, and it found defendant guilty of second-degree disorderly conduct.
On appeal, defendant argues that the trial court erred when it denied his motion for judgment of acquittal because the disorderly conduct statute, ORS 166.025(1)(b), violates Article I, section 8, and the First Amendment as applied to his conduct. The state argues that ORS 166.025 (1)(b) is constitutional as applied in this case.
We begin with the state constitutional analysis. The Oregon Supreme Court set forth a framework to address Article I, section 8, free expression issues in State v. Robertson , 293 Or. 402, 649 P.2d 569 (1982). That framework distinguishes "between laws that focus on the content of speech or writing and laws that focus on the pursuit or accomplishment of forbidden results ." State v. Plowman , 314 Or. 157, 164, 838 P.2d 558 (1992), cert. den. , 508 U.S. 974, 113 S.Ct. 2967, 125 L.Ed.2d 666 (1993) (emphasis in original). Content-focused laws sometimes are referred to as falling within "the first category of Robertson ." E.g. , State v. Babson , 355 Or. 383, 394, 326 P.3d 559 (2014). The Robertson court further divided laws focusing on forbidden results into laws that expressly prohibit expression in achieving those results (the second Robertson category) and those that do not refer to expression at all (the third Robertson category). Plowman , 314 Or. at 164, 838 P.2d 558. Laws focused on forbidden results that do not refer to expression-those in the third Robertson category-are facially constitutional and a defendant accused under such a statute "would be left to assert * * * that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8." Robertson , 293 Or. at 417, 649 P.2d 569. To determine whether a "category three" law violates Article I, section 8, as applied to particular conduct, "the court must examine how the law was applied to determine whether the application was directed at the content or the expressive nature of an individual's activities, advanced legitimate state interests, and *775 provided ample alternative opportunities to communicate the intended message." Babson , 355 Or. at 408, 326 P.3d 559.
We applied the Robertson framework to ORS 166.025(1)(b) in State v. Rich , 218 Or. App. 642, 180 P.3d 744 (2008), focusing on whether application of the statute was aimed at the content of the defendant's speech. We interpreted the statute's reference to "unreasonable noise," to the extent that it relates to noise caused by speech, "to refer only to its *345 noncommunicative elements." Id. at 647, 180 P.3d 744. So construed, the statute prohibits only "noise that is 'unreasonable' in volume, duration, etc.," making ORS 166.025 (1)(b)"a classic time, place, or manner law." Id . As a result, we held that the statute fits in the third Robertson category-as a law focused on forbidden results, not referring to expression-and a defendant therefore can show that the enforcement of ORS 166.025(1)(b) against his or her speech violates Article I, section 8, only by showing that the enforcement is directed toward the speech's content as opposed to its noncommunicative elements. Id . ; see also Hagel v. Portland State University , 226 Or. App. 174, 180, 203 P.3d 226, adh'd to as modified on recons. , 228 Or. App. 239, 206 P.3d 1219 (2009) (citing Rich for the proposition that "a disorderly conduct law that restricts an actor from causing public alarm through 'unreasonable noise' without referring to the communicative content of the noise" falls within the third Robertson category).
In short, Rich holds that an as-applied Article I, section 8, challenge to an "unreasonable noise" prosecution under ORS 166.025(1)(b) generally will fail if the defendant has been prosecuted based on the "noncommunicative elements" of his speech, such as volume, rather than on its content. Here, the record includes ample evidence that defendant was arrested and prosecuted for content-neutral reasons, that is, for amplifying his speech so loudly that it created "unreasonable noise" that recklessly created a risk of public inconvenience, annoyance, or alarm. That evidence includes testimony that officers told defendant that he was free to speak his mind but could not use the bullhorn to make an unreasonable noise. In addition, multiple employees and customers from surrounding businesses complained about the noise defendant was making; nothing in the *776 record suggests that their complaints were based on the content of defendant's message. And officers testified that they arrested defendant because of the volume and duration of his noise; indeed, it is unclear from the record whether they or any witnesses other than defendant's preacher and wife (and only when they were in close proximity to defendant) could even understand the specific content of what defendant was saying. Thus, the record supports the trial court's ultimate finding that "Mr. Pucket was arrested for noise. He was not arrested for preaching." In other words, defendant's prosecution was not "directed at the content or the expressive nature of [his] activities." Babson , 355 Or. at 408, 326 P.3d 559.
We turn to the other aspects of a " Robertson category three" analysis: whether application of ORS 166.025(1)(b)"advanced legitimate state interests[ ] and provided ample alternative opportunities to communicate the intended message." Id . It did. The state has a legitimate interest in preventing the kind of public inconvenience and annoyance that can be caused by high-volume and prolonged noise-even in otherwise busy locations. Defendant was not entitled to speak for hours through a bullhorn on maximum volume in a way that annoyed members of the public merely because he did so in a setting where sounds of traffic and commerce already were present. And we are not persuaded, on this record, that defendant lacked ample alternative opportunities to communicate his message to Christmas shoppers.
Under Rich , therefore, defendant was not entitled to a judgment of acquittal on the ground that application of the "unreasonable noise" provision of ORS 166.025(1)(b) to his speech violated Article I, section 8.
Defendant acknowledges Rich but contends that our analysis should focus, instead, on one of our pre- Robertson opinions, State v. Marker , 21 Or. App. 671, 536 P.2d 1273 (1975). In Marker , we considered an overbreadth challenge to ORS 166.025(1)(b) and, relying on a decision by a California court, held that the statute could constitutionally prohibit noise that involves expression "only if there is a clear and present danger of violence or if the communication is not constitutionally protected speech but merely a guise to disturb persons." Id. at 679, 536 P.2d 1273. Defendant argues that *777 Marker survives Robertson , but he does not explain precisely why the holding in Marker should control here. Presumably, he does not believe that the record contains evidence from which the trial court could find that his amplified *346 speech was "merely a guise to disturb persons."
Defendant's reliance on Marker to support his Article I, section 8, argument is misplaced. First and foremost, that case does not purport to apply Article I, section 8, but is predicated solely on the First Amendment. See Marker , 21 Or. App. at 677-78, 536 P.2d 1273 (addressing the defendant's argument that " ORS 166.025(1)(b) is overbroad and, therefore, has a chilling effect on First Amendment rights"); id . at 678-79, 536 P.2d 1273 (quoting In re Brown , 9 Cal. 3d 612, 619, 510 P.2d 1017, 108 Cal.Rptr. 465 (1973), cert. den. , 416 U.S. 950, 94 S.Ct. 1959, 40 L.Ed.2d 300 (1974), which analyzed the constitutionality of California's "disturbing the peace" statute under the First Amendment). Second, to the extent that Marker could be understood implicitly to encompass an Article I, section 8, analysis, it predates both the Supreme Court's decision in Robertson and our subsequent decision in Rich . To the extent that Marker could be understood to hold that Article I, section 8, more significantly restricts the government's ability to prohibit unreasonable noise than would Robertson or Rich , it would no longer be viable in light of those later cases.[3]
That brings us to our final point on this topic, which is that we do not understand the basic themes of Rich (relying on Robertson ) and Marker to differ in any meaningful way. Under both cases, what matters is whether defendant was prosecuted based on the communicative content of his speech-which would violate Article I, section 8-or was prosecuted based on other, noncommunicative aspects of the noise that he created. That consonance is reflected in *778 Statev. Atwood , 195 Or. App. 490, 492, 98 P.3d 751 (2004), in which we affirmed an "unreasonable noise" disorderly conduct conviction. Atwood involved an altercation at a school between a parent and a staff member in which the defendant, the parent, raised his fist and told the school's principal that "he was going to take off [the staff member's] head and shit down her throat." Id. at 493, 98 P.3d 751. The defendant loudly yelled this multiple times and was convicted of disorderly conduct for making "unreasonable noise." Id . at 493-95, 98 P.3d 751. In concluding that a rational trier of fact could find that the recitation was not intended to be communicative-and that the trial court therefore ruled correctly when it denied the defendant's motion for judgment of acquittal on the "unreasonable noise" count-we referred to Marker 's holding that ORS 166.025 (1)(b) is consistent with the First Amendment "only when there is a clear and present danger of violence or when the communication is not intended as such but is merely a guise to disturb persons." Id. at 500, 98 P.3d 751 (internal quotation marks omitted). That is, we again differentiated between impermissible content-based prosecutions and those prosecutions-like the one in Atwood -that are permissibly based on noncommunicative elements of the defendant's noise. Because the record supports a determination that the prosecution of defendant was not based on the content of his speech, we reject defendant's argument that Marker mandated entry of a judgment of acquittal here.
We turn to defendant's First Amendment argument. As defendant acknowledges, that analysis is governed by the holding in Ward v. Rock Against Racism , 491 US 781, 791, 109 S.Ct. 2746, 105 L.Ed. 2d 661 (1989), in which the Court held that "the government may impose reasonable restrictions on the time, place, or manner of protected speech" so long as those restrictions are content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication.
*347 For the same reasons that the content-neutral application of ORS 166.025(1)(b) to defendant's amplified speech does not run afoul of Article I, section 8, it also passes muster under the First Amendment "time, place or manner" analysis.
Affirmed.

Defendant also argues that the statute is unconstitutionally vague. We conclude that the vagueness argument that defendant presents on appeal is not preserved. Accordingly, we decline to address it.

As pertinent here, ORS 166.025 provides:
"(1) A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:
" * * * * *
"(b) Makes unreasonable noise * * *."

Defendant has not developed an argument that Marker embodies a construction of ORS 166.025(1)(b) that is binding in this case. In any event, such an argument would fail in light of Rich , which itself provides an authoritative and reasoned construction of the statute. 218 Or. App. at 647-50, 180 P.3d 744 (interpreting "unreasonable noise" to refer only to speech's "noncommunicative elements," meaning that application of the statute violates Article I, section 8, "only if the enforcement is directed toward the speech's content and not its noncommunicative elements"). To the extent that Marker can be understood to place a limiting construction on ORS 166.025(1)(b), that construction has been superseded by the more recent construction announced in Rich .