274 November 29, 2023 No. 613

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RYAN JAMES GARDINER,
*Defendant-Appellant.*

Washington County Circuit Court
19CR77922; A178357

Beth L. Roberts, Judge.

Submitted October 27, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment of conviction entered after a conditional guilty plea for two counts of interfering with a peace officer, ORS 162.247 (2019).[1] Defendant assigns error to the trial court's denial of his demurrer and argues that the statute is overbroad as applied to defendant's right to free expression under Article 1, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. We affirm.

Defendant and the state agree as to the relevant facts, which were adduced at the hearing on defendant's demurrer.[2] A woman reported that a man knocked on her door, stabbed her in the face, and ran away. Hillsboro Police Officers and medical and fire department personnel responded to that call. In order to find the assailant, the officers deployed a K-9-unit tracking dog. Defendant approached the area on foot and began filming. At one point, while defendant was present, a bicyclist rode through the area after being told to wait 30 seconds by an officer. Defendant had some interactions with officers, and each of them told him to stay clear of the "dog track."[3] Defendant was arrested after he disobeyed Edwards' order to leave the area because defendant continued to walk parallel to the dog track, thereby "interfering with the scent" and interfering with the duties of the police officers. Defendant was charged under ORS 162.247 with two counts of interfering with a peace officer. He filed a demurrer to the charges, asserting

---

[1] At the relevant time, ORS 162.247 (2019) provided:

"A person commits the crime of interfering with a peace officer if the person *** intentionally acts in a manner that prevents, or attempts to prevent, a peace officer *** from performing the duties of the officer ***."

[2] Even assuming that a demurrer was the proper vehicle to bring this challenge and because defendant's demurrer fails on the merits, we need not address the potential procedural limitations of a demur when considering extrinsic facts. *See* ORS 135.630 (demurrer standards); *see also State v. Barrett*, 302 Or App 23, 30 n 9, 460 P3d 93 (2020), *rev den*, 366 Or 731 (2020); *State v. Howard*, 325 Or App 696, 698 n 1, 529 P3d 247 (2023), *rev den*, 371 Or 333 (2023).

[3] According to officer testimony, the police dog is "trained for [tracking] fresh human odor" through footprints or air scent. Each dog track is never "exactly the same" because factors like weather temperature and wind direction affect a track. During a track, the dog-handler's primary focus is to observe the dog's behavior as it searches for scents, while other officers provide cover for the dog-handler.

an "as applied" challenge to the statute's application under Article I, section 8, and the First Amendment. When the trial court denied his demurrer, defendant entered a conditional guilty plea.

On appeal, defendant asserts that the charges violate his constitutional right to film police activity, which is protected under Article I, section 8, and the First Amendment. The state agrees that filming the police is a protected activity but contends that defendant was not convicted for filming the police; rather he "was convicted because he interfered with the performance of [the officers'] duties," an act that was completely independent from his filming.

We review a trial court's denial of a demurrer for legal error. *State v. Hirschman*, 279 Or App 338, 344, 379 P3d 616 (2016). The analytical framework for assessing Article 1, section 8, constitutional challenges includes three categories. *State v. Robertson*, 293 Or 402, 649 P2d 659 (1982). The first category "consists of laws that focus on the *content* of speech or writing or are written in terms directed to the substance of any opinion or any subject of communication." *City of Eugene v. Miller*, 318 Or 480, 488, 871 P2d 454 (1994) (internal quotation marks omitted; emphasis in original). The second category "consists of laws that focus[] on forbidden effects but expressly prohibit[] expression used to achieve those effects." *Id.* (internal quotation marks omitted). Generally, those laws are analyzed for overbreadth. *Id.* The third category "consists of laws that focus[] on forbidden effects, but without referring to expression at all." *Id.* (internal quotation marks omitted).

The parties agree that ORS 162.247 is a speech-neutral statute that falls under category three, as contemplated by *Robertson*. *See Miller*, 318 Or at 490 (explaining that if a "law does not refer to expression at all, then the appropriate inquiry is whether the law could be constitutionally applied to the defendant's specific act or acts of expression. That 'as applied' inquiry arises out of the third *Robertson* category."). In order to determine whether a "category three law violates Article I, section 8, as applied to particular conduct, the court must examine [1] how the law was applied

to determine whether the application was directed at the content or the expressive nature of an individual's activities, [2] advanced legitimate state interests, and [3] provided ample alternative opportunities to communicate the intended message." *State v. Pucket*, 291 Or App 771, 774-75, 422 P3d 341 (2018), *rev den*, 363 Or 727 (2018) (internal quotations omitted). For the reasons discussed below, we agree that the trial court properly found that all three factors favor the state.

First, we consider "how the law was applied to determine whether the application was directed at the content or the expressive nature of an individual's activities." *Pucket*, 291 Or App at 774. Defendant argues that because the officers allowed a bicyclist to ride through the area and yet "disallow[ed] defendant to film, the officers exercised their authority *more restrictively* against defendant than they did other members of the public" (emphasis in original). We disagree. Before the bicyclist rode through the area where the dog track was present, the officer ordered the bicyclist to stop and wait 30 seconds; the bicyclist obliged and rode away without any incident. That interaction does not undermine the conclusion that defendant's conduct of walking parallel to the dog track and disobeying orders—as opposed to the expressive activity of filming the police—were the basis of his arrest. Indeed, the officers repeatedly reassured defendant he could film but told him that he needed to avoid the dog track. Defendant's filming of the police was incidental to his conduct of walking parallel to the dog track. *See City of Springfield v. Kellim*, 324 Or App 614, 617, 527 P3d 68 (2023) (explaining that a statute is not unconstitutional when "directed at noncommunicative elements, and that, as applied to defendant *** was [not] directed *** at the content of his speech").

Second, we consider whether the application of ORS 162.247 advanced legitimate state interests. *Pucket*, 291 Or App at 774. Defendant argues that the application of the statute did not advance legitimate state interests because his following the dog track did not hinder any police investigations. We disagree. The state advanced the legitimate interests of enforcing the statute for three reasons, which

we find to be appropriate: (1) an armed suspect may have been present in the area; (2) there were public and police officer safety concerns because of that armed suspect; (3) and the situation was not static because there were no defined search boundaries.

Finally, we consider whether defendant was "provided ample alternative opportunities to communicate the intended message." *Id*. at 775. Defendant argues that officers did not provide alternative avenues because they did not "provide him with specific, clear, unambiguous directions on how to" film the police "that were narrowly tailored to their concern." We disagree. On at least two occasions, defendant was told by at least two officers where to stand to avoid interfering with the dog track. Before arresting defendant, an officer told him to remain in a certain spot. Defendant initially listened to the officer but then began walking parallel to the dog track. Defendant was arrested only after the officers provided him alternative opportunities to remain in specific areas to continue filming.

For the same reasons, we conclude that the officers' conduct did not violate the First Amendment. *Id*. at 778 (explaining that because "the content-neutral application of" the statute as applied to defendant's conduct did not "run afoul of Article I, section 8, it also passes muster under the First Amendment").

Affirmed.